## Carroll v. Carroll's Executor et al.

(Decided March 24, 1933.)

C. C. TURNER and D. L. HAZELRIGG for appellant.

NORMAN, QUIRK & GRAHAM, and RICHARD H. HILL for appellees.

DAVID R. CASTLEMAN for executor of John D. Carroll.

Opinion of the Court by Judge Richardson—Reversing.

This action was filed under the Declaratory Judgment Act, sec. 639a-1 et seq., Civil Code of Practice,

seeking a construction of the will of John D. Carroll, especially clause 3.

The testator left surviving him a widow and two sons. His son, John S. Carroll, since the death of the testator, has died, testate, leaving surviving him his mother, his brother, Lewis Carroll, and a widow, Frances Hazelrigg Carroll. John S. Carroll devised to his mother $10,000; to his brother, Lewis Carroll, an interest in certain real estate and the sum of $2,500; and to his wife the balance of his estate "of every sort and description, real, personal and mixed."

A construction of clause 3 of the will of John D. Carroll is required to determine the interest of John S. Carroll in the trust fund set up out of the estate of John D. Carroll by clause 2 of his will, for the use of Mrs. Carroll, Sr. The widow of John S. Carroll insists that he was by clause 3 of his father's will devised one-half of the trust fund set up in clause 2, in fee, subject to be defeated by a condition subsequent. A rather anomalous contention is presented by the appellees. They claim that the testator "desired that his property should go ultimately to the descendants of his own blood, * * * that he intended to exclude any collateral member of his wife's family, or strangers to his blood, from ever receiving any of his property; * * * that he intended to exclude the widows, if any, of his sons, from the use and benefit of his property; * * * that he has created by his will three kinds of interest in his property," viz. a vested interest in John S. Carroll, in a certain designated amount of intangible property; in Lewis Carroll a present defeasible interest in a certain designated amount of the tangible property; and to John S. Carroll a contingent interest in one-half of the trust fund set up by clause 2 of his will. To establish this anomaly, it is argued that the property devised by clause 3 "is a gift to a class composed of the testator's children or the children of such children by way of substitution, per stirpes, with the right of survivorship," thus excluding the widow of a deceased member dying before the life tenant, and, if all of the members of the class die without leaving issue, prior to the death of the life tenant (their mother), then it was the intention of the testator to die intestate as to the prpoerty covered by clause 3, and "it will devolve" under the laws of descent and

distribution. It is asserted that the "general scheme and underlying purpose and intention as gathered from his whole will, was that all of his property should go to his immediate family or his descendants to the exclusion of strangers of his blood."

The circuit court accepted this interpretation of the will of the testator, and entered a judgment accordingly. We do not find support for such construction of the will, either in its language or by the application to its context the ordinary rules of construction.

The will of John D. Carroll is plain and simple in its language, clear in its meaning, and free from ambiguity, and it is not necessary or required to resort to technical rules of construction to ascertain and determine the intention of the testator.

In clause 2 it is stated that his personal estate consists of accounts, bonds, stocks, and other intangibles, with direction to the executors to dispose of it as set out therein and in clause 3. A sufficiency is directed to be set up and held in trust to net an annual income of $3,000, therein directed to be paid to his wife monthly or quarterly, at her election; one-half of the remainder to be turned over to his son John S. Carroll, and the other half to be kept for the use of his son Lewis Carroll, until he reaches the age of 23, and then to be turned over to him, and before that time his executors are directed to pay to Lewis the income on his share, and if he should die without leaving children before he reaches the age of 23, his share is to go to his brother, John S. Carroll, or his living issue, if any.

Clause 3 reads:

"At the death of my wife the fund set apart for her use and benefit during life will be paid to my children in equal shares, but if either should die before she does, leaving living children, they will get his share."

It is argued that the testator by the use of the term "my children" in clause 3 thereby intended to create, and does create, a class within the meaning of the word "class" as it is generally recognized by the text-writers and the courts.

It is very clear that the words "my children" were not used in this clause by the testator with the

intent or purpose to create a class, but they were used merely as a convenience to avoid repeating the names of his children who were named in the preceding clause.

The fact, the testator used the words "my children" in clause 3, instead of their individual names, does not show a change of his intention as it is expressed in clause 2.

The number of those who were to take under clause 3 and the share of each is certain, and does not depend upon the number of the class at any future time; therefore the gift under it is not to a class. Page on Willis, vol. 2 sec. 919, p. 1354. Nor is there any expression in the will indicating a revocation of the first portion of the clause in favor of either son, or manifesting a survivorship or a lapse of a share, or that the testator intended, in the event of the death of either son without living issue, during the existence of the trust, the share of either or both of his sons would revert to his estate. Struss v. Fidelity & Columbia Trust Co., 182 Ky. 106, 206 S. W. 177; Melton v. Sellars, 167 Ky. 704, 181 S. W. 346; Blackstone v. Althouse, 278 Ill. 481, 116 N. E. 154, L. R. A. 1918B, 230; In re Estate of Margaret King, 200 N. Y. 189. 93 N. E. 484, 34 L. R. A. (N. S.) 945, 21 Ann. Cas. 412; Aldridge v. Boswell, 2 Gill (Md.) 37.

The devise under clause 3, although the words "my children" are used instead of the names of the sons, is one to his two sons named in clause 2. If clause 3 read, "At the death of my wife the fund set apart for her use and benefit during her life will be paid to my children in equal shares," without being followed by the phrase, "but if either should die before she does, leaving children, they will get his share," it cannot be doubted that it unequivocally vests in each son a title in fee to one-half the trust fund. The language, "but if either should die before she does leaving children, they will get his share," was intended by the testator not to reduce to a life estate or to convert into a contingent remainder the fee given by the first portion of this clause, in the trust fund devised, to his sons: but merely to qualify the fee, making it dependable on the condition subsequent, as evidenced by the above-quoted portion of the sentence. The phrase, "but if either should die before she does, leaving children, they will

get his share," merely comprises two contingencies: (a) Dying before his mother; (b) leaving living children. These contingencies constitute a condition subsequent and no more. This view conforms to the often enunciated rule of construction that the law favors a vesting of estates. In cases of doubt it favors a fee rather than a less estate. An estate once given by fee will not be defeated by a subsequent provision in the same instrument limiting it to a smaller estate, unless the language of the instrument or the intention of the testator requires it. McCauley's Guardian v. Dale, 108 S. W. 268, 32 Ky. Law Rep. 1243; Schneiderhahn's Guardian v. Zeller, 110 S. W. 834, 33 Ky. Law Rep. 694; Washer's Ex'r v. Washer's Ex'r, 143 Ky. 650, 137 S. W. 227; Pritchett v. Corder, 105 S. W. 910, 32 Ky. Law Rep. 418; Burnam v. Suttle, 148 Ky. 495, 147 S. W. 3; Sherley v. Sherley, 192 Ky. 122, 232 S. W. 53; Grubbs' Ex'r v. Grubbs' Ex'r et al., 190 Ky. 258, 227 S. W. 272. On a condition precedent, a title does not pass or vest until it is performed, while a condition subsequent operates by way of a defeasance of the title that has once vested. The real test as to whether a condition is of one kind or the other is that of intention, and this is to be gathered from the context of the instrument construed in the light of those rules and principles applicable in such cases. Mercer-Lincoln Pineknob Oil Co. v. Pruitt, 191 Ky. 210, 229 S. W. 374; Board of Councilmen of City of Frankfort v. Capital Hotel Co., 188 Ky. 754, 224 S. W. 197.

In Crozier et al. v. Cundall et al., 99 Ky. 202, 35 S. W. 546, 18 Ky. Law Rep. 116, one clause of the will devised to two of the daughters of testator, land, "to them and their heirs forever," but in a subsequent clause it provided: "But if either of them should die without bodily issue, then such portion of my estate as is devised to them shall revert back to and be equally divided between the rest of my children and the children of those who are dead." It was held that the will vested a defeasible fee which could be defeated alone by the death without bodily heirs. The only distinction in this respect between the will here and in that case is, in the present case, the contingency is dying "leaving children," and in the former it is "without bodily issue." Sale v. Crutchfield, 8 Bush, 636; Com. v. Pollitt, 76 S. W. 412, 25 Ky. Law Rep. 790; Allen v. Allen, 108 S. W. 250, 32 Ky. Law Rep. 1159; Parepoint v.

Parepoint's Adm'r, 228 Ky. 639, 15 S. W. (2d) 513; Walker v. Walker's Adm'r, 239 Ky. 501, 39 S. W. (2d) 970.

Only one of the contingencies comprising the condition subsequent provided for in clause 3 of the will has occurred; i. e., death of John S. Carroll during the life of the life tenant. The second one, dying leaving "living children," it is conceded, has not occurred. It is a general rule that, where conjunctive contingencies are specified to defeat a fee devised by will or granted by deed, both must concur. Page on Wills, vol. 2, sec. 1132, p. 1886; Bedford v. Bedford's Adm'r, 99 Ky. 273, 35 S. W. 926, 18 Ky. Law Rep. 193; McCormick v. Reinberger, 192 Ky. 608, 234 S. W. 300; Forsyth v. Forsyth, 46 N. J. Eq. 400, 19A. 119; In re Kennedy's Estate, 190 Pa. 79, 42 A. 459. And, until the happening of the double contingencies constituting the condition subsequent, the fee is not defeated. See cases supra.

"The rule is well-settled that where the devise over is to the children of the life tenant, although they may not be named, or to the children, naming them, they take a vested estate in remainder; but if the devise over is to the 'heirs,' * * * unless the word 'heirs' means children, the heirs take only a contingent remainder." Jones v. Thomasson, 159 Ky. 196, 166 S. W. 1001, 1003. The first above rule controls the present case.

It is argued that the testator "was attempting to provide that under any and all circumstances the corpus of the 'trust fund' should go to his descendants," under the statutes of descent and distribution, but that "he inadvertently neglected to provide for one contingency that may or may not happen, * * * in case of both of his children dying before the life tenant does, without leaving children, does not alter his apparent intention, nor the construction of his will in accordance with such intention."

This argument is fallacious. It is evidently a product of a misunderstanding of the intention of the testator as it is gathered from his entire will, including clause 3. In fact, to find support, it requires a rewriting of the will in this language:

"At the death of my wife the fund set apart for her use and benefit during her life will be paid to

my children in equal shares, if living at her death; if not living at her death, but die with issue living at their death, then to their issue; if none, to my next of kin.''

The will of the testator is not susceptible of such construction, nor is the court authorized to rewrite it, which is required to give to it the meaning insisted for by the appellees. There is no language in the will authorizing the application of the rule controlling a devise to a class, or the doctrine of survivorship, or its reverting to the estate of the testator under any conditions or at all. The two sons were devised by clause 3 the remainder interest in the trust fund, subject to be defeated only in the event of the occurring of the condition designated by the concluding phrase of this clause.

It is argued that no interest in the trust fund is vested by the will until the death of the beneficiary of the trust. This argument loses sight of the ancient rule that the distinction between a vested and contingent remainder is, ''The present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession would become vacant, before the estate limited in remainder determined.'' Bank of Taylorsville v. Vandyke, 159 Ky. 201, 166 S. W. 1024. Chancellor Kent wrote (Kent, vol. 4, p. 206) that ''it is not the uncertainty of the enjoyment in the future, but the uncertainty of the right to that enjoyment, which marks the distinction between a vested and a contingent remainder.'' In Sherley v. Sherley, 192 Ky. 122, 232 S. W. 53, 56, when discussing this subject, this court said:

''The deferring of the time for the payment to the sons of the proceeds of the sale of the property did not arise from their incapacity to take, but the payment of the bequests was deferred simply for the convenience of the estate and the benefit of the life tenant, and in such case the remainder vests at once in the remaindermen, where they are designated with certainty.''

To this excerpt, we may, with reason, append the following: If the testator did not intend that his sons should receive the property, it was not manifested by anything contained in the will, or, if he regarded their

right to receive it as in any way uncertain, it is not manifested, except as indicated solely by the last part of the sentence comprising clause 3 of the will constituting only a condition subsequent.

The question now under discussion may be disposed of in the language of this court in Jackson's Adm'r v. Sublett, 10 B. Mon. 467:

"'Vested remainders are those by which a present interest passes to the party, though to be enjoyed in future, and by which the estate is invariably fixed to a determinate person after a particular estate is spent.' * * *

"'When the absolute property in a fund is bequeathed in fractional interests in succession, at periods which must arrive: as to, or in trust for A for life, and after his death to B, the interests of the first and subsequent taker will vest together, and notwithstanding B may die before A his personal representatives will be entitled to receive the legacy upon the death of A.' * * * In construing that portion of the will, which has been already quoted, the Court say, 'the testator evidently intended to make a disposition of his whole estate for life to his wife, and in remainder to his two children, which constituted the whole fee simple in his entire estate. To be divided between my two children includes not only a devise to them, but also the character of the devise, to-wit, a tenancy in common.' * * *

"'The person entitled to a vested remainder has an immediate, fixed right of future enjoyment, that is, an estate in presenti, though it can only take effect in possession and pernancy of the profits at a future period.' * * *

"'A devise over upon a contingency has not the effect of preventing the shares of legatees from vesting in the meantime provided the words of bequest be, in other respects, sufficient to pass a present interest.'"

The appellees have copied portions of the wills and excerpts of the opinions of this court dealing with them in Dohn's Ex'r v. Dohn, 110 Ky. 884, 62 S. W. 1033, 64 S. W. 352, 23 Ky. Law Rep. 256; Rogers v. Burress, 199 Ky. 766, 251 S. W. 980; Ross v. Ware, 131 Ky. 828,

116 S. W. 241; Redman v. Hubbard, 140 Ky. 71, 130 S. W. 955, 37 L. R. A. (N. S.) 728; Aultman Co. v. Gibson's Guardian, 67 S. W. 57, 23 Ky. Law Rep. 2296; Gatto v. Gatto, 198 Ky. 569, 250 S. W. 833, and other cases.

A comparison of the wills therein involved with that in the present case distinctly and clearly emphasizes the difference between them, and shows that those cases are not illustrative of a proper construction of the will here involved.

This court, in American Christian Mission Society v. Tate, 198 Ky. 621, 250 S. W. 483, 484, said:

"If we but let the will speak for itself, instead of attempting to construe its plain, unambiguous terms according to a set of abstruse and arbitrary rules, there is not a chance to make a mistake; but if we apply said rules we are led far afield. The modern tendency of courts everywhere is to discard, when it can be done, all technical rules of construction anciently employed in the interpretation of * * * wills, and measure the document by plain common sense, giving it such meaning as its maker, a rational being, is bound to have intended by the words employed."

So viewing the will of John D. Carroll, it is our conclusion that the death of John S. Carroll, without children surviving him, was an essential component, by the expressed words of the testator, of the condition subsequent which alone, by the language of the will, is provided as the defeasance of the fee vested in John S. Carroll by the first part of clause 3, one-half of the trust fund, and, since the defeasance did not happen during his life, and it is impossible for it ever to happen because of his death, therefore the fee is absolute, and vests under the will of John S. Carroll in the devisees designated therein. The executor of John D. Carroll was neutral in this litigation, and has not briefed the case.

The contrary decree of the circuit court is reversed for proceedings consistent with this opinion.

Whole court sitting.